1   KAMALA D. HARRIS
    Attorney General of California
2   JENNIFER KIM
    Supervising Deputy Attorney General
3   ELISA B. WOLFE-DONATO
    KENNETH K. WANG
4   Deputy Attorneys General
    State Bar No. 120357
5     300 South Spring Street, Suite 1702
      Los Angeles, CA  90013-1256
6     Telephone:  (213) 897-0633
      Fax:  (213) 897-5775
7     E-mail:  Elisa.Wolfe@doj.ca.gov
    *Attorneys for California Department of Health Care*
8   *Services and California Department of Public Health*

9               **IN THE UNITED STATES BANKRUPTCY COURT**

10             **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11                        **SANTA ANA DIVISION**

12

| In re: | Case No. 8:14-bk-11335-CB |
|--------|----------------------------|
| | Jointly administered with |
| | Case No. 8:14-bk-11337-CB |
| | Case No. 8:14-bk-11358-CB |
| | Case No. 8:14-bk-11359-CB |
| | Case No. 8:14-bk-11360-CB |
| **PLAZA HEALTHCARE** | Case No. 8:14-bk-11361-CB |
| **CENTER LLC,** | Case No. 8:14-bk-11362-CB |
| | Case No. 8:14-bk-11363-CB |
| | Case No. 8:14-bk-11364-CB |
| | Case No. 8:14-bk-11365-CB |
| Debtor and Debtor-in- | Case No. 8:14-bk-11366-CB |
| Possession. | Case No. 8:14-bk-11367-CB |
| | Case No. 8:14-bk-11368-CB |
| /x/  Affects all Debtors. | Case No. 8:14-bk-11370-CB |
| | Case No. 8:14-bk-11371-CB |
| | Case No. 8:14-bk-11372-CB |
| | Case No. 8:14-bk-11373-CB |
| | Case No. 8:14-bk-11375-CB |
| | Case No. 8:14-bk-11376-CB |
| | |
| | **EMERGENCY MOTION TO DISQUALIFY STALKING HORSE PARTIES FROM (1) INTERIM MANAGEMENT OF DEBTORS' FACILITIES, AND (2) PURCHASING DEBTORS' FACILITIES OR ASSETS** |
| | |
| | Courtroom:   5-D |
| | Judge        Hon. Catherine Bauer |

1

1       Pursuant to Local Bankruptcy Rules 2081-1(a)(12) and 9075-1, the

2 California Department of Health Care Services ("**DHCS**") and the California

3 Department of Public Health ("**CDPH**") hereby move on an emergency basis for an

4 order disqualifying the Stalking Horse Parties from (1) the interim management of

5 any of the Debtors' skilled nursing facilities, and (2) purchasing any of the Debtors'

6 skilled nursing facilities or assets.

7       There are five grounds for this motion:

8    1.   **RECHNITZ IS A VIOLATOR OF INDUSTRY LAWS AND**

9 **REGULATIONS**. The principal individual behind the Stalking Horse Parties is

10 Shlomo Rechnitz.  Rechnitz and his companies (Brius Management Company and

11 Brius LLC) have a history of failing to comply with laws and regulations enforced

12 by DHCS and the federal Centers for Medicare and Medicaid Services ("**CMS**").

13 Specifically - -

14      A:  Rechnitz and his companies currently own 57 skilled nursing

15 facilities.

16      B:  In October 2013, DHCS issued an enforcement order which has

17 been and is continuing to cause the withholding of 100% of Medi-Cal payments to

18 two of Rechnitz's skilled nursing facilities.  This order was imposed because

19 Rechnitz repeatedly and continuously failed or refused to submit required audit

20 materials to DHCS.

21      C:  ***Within the last week***, DHCS issued a new enforcement order which

22 threatens to withhold 20% of Rechnitz's Medi-Cal payments for the remaining 55

23 of his 57 skilled nursing facilities.  This order is being imposed because Rechnitz

24 has again failed or refused to submit required audit materials to DHCS.

25      D:  In or around April 2014, the federal CMS issued an enforcement

26 order to one of Rechnitz's skilled nursing facilities.  This federal enforcement order

27 seeks to (i) deny payment for new admissions; (ii) impose civil monetary penalties;

28 and (iii) terminate the facility's Medicare provider agreement no later than October

2, 2014, if substantial compliance with Medicare participation requirements is not

2, 2014, if substantial compliance with Medicare participation requirements is not

promptly achieved and maintained.

        E:   Rechnitz's continued and repeated refusals to comply with industry

laws and regulations is harming the skilled nursing industry.

    2.   **RECENT ENFORCEMENT ACTIONS WILL HARM**

**RECHNITZ'S FINANCIAL STABILITY.**  The financial impact of these

enforcement orders will hurt Rechnitz's operational revenue.  Accordingly, he will

have less income with which to provide quality patient care.

    3.   **RECHNITZ PROBABLY WON'T BE ABLE TO GET**

**REGULATORY APPROVAL TO BE A MEDI-CAL PROVIDER.**  The

pending sale promises to entrust Rechnitz with another 19 skilled nursing facilities.

However, because of Rechnitz's history of enforcement activity with DHCS, DHCS

is unlikely to approve a transfer of Medi-Cal provider contracts from Debtors to

Rechnitz.

    4.   **RECHNITZ PROBABLY WON'T BE ABLE TO GET**

**REGULATORY APPROVAL TO OPERATE DEBTORS' SKILLED**

**NURSING FACILITIES.**  Additionally, for Rechnitz to become licensed to

operate Debtors' 19 skilled nursing facilities, Rechnitz must meet a "good

character" requirement.  CDPH is unlikely to grant licensure to Rechnitz because he

will be unable to satisfy the "good character" requirement.

    5.   **THIS COURT SHOULD NOT PERMIT AN UNQUALIFIED**

**BUYER TO TAKE OVER DEBTORS' 19 SKILLED NURSING**

**FACILITIES.**  Because (i) Rechnitz tends to not comply with regulatory

requirements, (ii) Rechnitz's revenue is being markedly reduced and could

compromise patient care, (iii) Rechnitz is unlikely to be approved as a Medi-Cal

provider for Debtors' facilities, and (iv) Rechnitz is unlikely to be licensed to

operate Debtors' facilities, this Court should not allow Rechnitz to manage

3

1  Debtors' skilled nursing facilities on an interim basis, and should not approve

2  Rechnitz's purchase of Debtors' facilities or assets.

3

4       The grounds for this motion are supported by the appended declarations from

5  the following individuals:

6          1.  Jean Iacino, Interim Deputy Director for the Center for Health Care

7  Quality at the California Department of Public Health.

8          2.  Bob Sands, Assistant Deputy Director of Audits and Investigations

9  ("**A&I**") at the California Department of Health Care Services.

10

11       A separate declaration re notice and service of process will be provided at the

12  time of hearing.

13

14             **MEMORANDUM OF POINTS AND AUTHORITIES**

15       Local Bankruptcy Rule 2081-1(a)(12) provides that a movant may request

16  emergency or expedited relief where special circumstances exist.  Moreover, "The

17  motion must be supported by evidence that exigent circumstances exist justifying

18  an expedited hearing."  Here, the special circumstances are that Shlomo Rechnitz, a

19  serial violator of rules within the skilled nursing industry, is slated to take over

20  interim management of Debtors' 19 skilled nursing facilities on September 1, 2014,

21  i.e., in four days.  Because of his multiple enforcement actions and repeated

22  violations of regulatory authority, Rechnitz is not qualified to assume such an

23  important role.  During the last week, the regulatory situation involving Rechnitz

24  suddenly became markedly worse: he was the subject of a new DHCS enforcement

25  action which threatens to hold back 20% of his Medi-Cal payments for 55 of his 57

26  skilled nursing facilities.  This new enforcement action, when it goes into effect on

27  September 22, 2014, will affect Rechnitz's business revenue and threaten his ability

28  to deliver high quality patient care.  The appended declarations of Jean Iacino and

1  Bob Sands establish the background facts and circumstances which give rise to the

2  special circumstances and the threat to patient care created by Rechnitz.

3      Local Bankruptcy Rule 9075-1, subdivision (a), sets forth the requirement for

4  bringing an emergency motion. The moving parties have met, or are in the process

5  of meeting these requirements.

6

7      Wherefore, the California Department of Health Care Services and the

8  California Department of Public Health urge this Honorable Court to (i) allow the

9  instant motion to be heard on an emergency basis, (ii) disqualify the Stalking Horse

10  Parties/ Bidder from taking over the interim management of Debtors' 19 skilled

11  nursing facilities, and (iii) disqualify the Stalking Horse Parties/ Bidder from

12  purchasing Debtors' 19 skilled nursing facilities or the assets thereof.

13

14  Dated:  August 28, 2014                    Respectfully submitted,

15                                             KAMALA D. HARRIS
                                               Attorney General of California
16                                             JENNIFER KIM
                                               DIANE S. SHAW
17                                             Supervising Deputy Attorneys General

18

19                                             /s/ *Elisa B. Wolfe-Donato*
                                               ELISA B. WOLFE-DONATO
20                                             Deputy Attorney General
                                               *Attorneys for California Department*
21                                             *of Health Care Services and*
                                               *California Department of Public*
22                                             *Health*

23

24

25

26

27

28

**DECLARATION OF JEAN IACINO**
**IN SUPPORT OF EMERGENCY MOTION TO**
**DISQUALIFY STALKING HORSE PARTIES FROM (1) INTERIM**
**MANAGEMENT OF DEBTORS' FACILITIES, AND (2) PURCHASING**
**DEBTORS' FACILITIES OR ASSETS**

I, Jean Iacino, declare as follows:

1.      I have personal knowledge of the following facts, and I am competent to testify to their truth, under oath, if called as a witness.

2.      I am the Interim Deputy Director for the Center for Health Care Quality at the California Department of Public Health (CDPH).

3.      CDPH is responsible for overseeing and regulating skilled nursing facilities for the protection of the health and safety of the residents.  As the Interim Deputy Director for the Center for Health Care Quality, I am responsible for developing, implementing, and enforcing programs to protect patient health and safety; ensuring quality health care for patients, clients and residents in health facilities; and ensuring the quality of healthcare staff and professionals who work in health facilities through licensing, examination, inspection, education, and proficiency testing.

4.      I am familiar with Shlomo Rechnitz (Rechnitz) and his corporate entities, Brius Management Company and Brius LLC (collectively as Brius). Rechnitz currently owns and controls fifty-seven (57) skilled nursing facilities licensed by CDPH.

5.      On Tuesday, August 26, 2014, the Department of Health Care Services (DHCS) notified me that (i) Rechnitz and Brius have refused to provide necessary audit documentation to DHCS after being given many opportunities to do so, and that (ii) on August 22, 2014, DHCS notified Rechnitz's counsel, Mark Johnson of Hooper, Lundy, and Bookman, P.C., that DHCS will commence withholds of twenty percent (20%) of Medi-Cal funding from fifty-five (55) skilled nursing facilities owned and controlled by Rechnitz, if the requested documentation is not provided to DHCS by September 22, 2104.  In my experience and observation, this

1    near across-the-board 20% withholding of Medi-Cal payments is a significant,

2    serious enforcement action by DHCS.

3         6.    Also on August 26, 2014, I learned that in October 2013, DHCS

4    imposed a one hundred percent (100%) withhold of Medi-Cal funding upon the two

5    other skilled nursing facilities controlled and owned by Rechnitz for their repeated

6    and ongoing refusal and failure to file a cost report for the 2012 cost reporting year.

7    The repeated and ongoing failure and refusal to file the necessary cost reports for

8    the 2012 year has delayed DHCS's ability to complete its audit of the fifty-seven

9    (57) facilities owned and controlled by Rechnitz and has impeded DHCS's ability

10    to establish the NF B (continuous nursing care) nursing rates for the new rate year

11    that started on August 1, 2014.  This is a very serious violation that creates

12    significant harm to the State of California and the skilled nursing community.

13         7.    I have reviewed the events leading to the imposition of the current one

14    hundred percent (100%) withhold of Medi-Cal funding to two facilities, and the

15    pending twenty percent (20%) withhold of that funding from fifty-five facilities.

16    Rechnitz's conduct shows repeated and ongoing disregard for regulatory

17    requirements.

18         8.    Given the significant number and portion of the current and future

19    Medi-Cal funding withhold, CDPH has grave concerns, in the instant case, about

20    the pending sale of additional facilities to Rechnitz.

21         9.    A reduction of Medi-Cal funding to Rechnitz's currently-owned group

22    of fifty-seven (57) skilled nursing facilities could seriously jeopardize the services

23    and compromise the care provided to residents at those facilities, as well as at any

24    new facilities that Rechnitz may acquire.

25         10.    I recently became aware that the federal Centers for Medicare &

26    Medicaid Services (CMS) has taken several enforcement actions against a facility

27    owned and controlled by Rechnitz – Gridley Healthcare & Wellness Centre LLC –

28    for substantial noncompliance with federal requirements for participation in the

Medicare and/or Medicaid programs.  The CMS enforcement actions include:

- denial of payment for new admissions;

- civil monetary penalties; and

- termination of the facility's Medicare provider agreement no later than October 2, 2014, if substantial compliance with Medicare participation requirements is not promptly achieved and maintained.

11.    These developments and enforcement actions by both state and federal agencies raise significant concerns as to the wisdom of the sale of additional skilled nursing facilities to Rechnitz.  Chief among those concerns is the safety of placing additional residents under the care of Rechnitz and his corporate entities, even on a temporary basis, given their demonstrated record of repeated and ongoing noncompliance with state and federal regulatory requirements, and resultant enforcement actions.

12.    Furthermore, as the state licensing agency for skilled nursing facilities, CDPH is required by section 1265 of the California Health and Safety Code (West 2006) to consider several factors in making its decisions to grant or deny licensure. One of those factors is the demonstration by the applicant of reputable and responsible character.  Rechnitz's failure to cooperate fully with DHCS and CMS creates great doubt as to whether Rechnitz can satisfy this "good character" requirement.

13.    I make this declaration in my official capacity.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on August 28 , 2014, at Sacramento, California.

Jean Iacino
Declarant

4

**DECLARATION OF BOB SANDS
IN SUPPORT OF EMERGENCY MOTION TO
DISQUALIFY STALKING HORSE PARTIES FROM (1) INTERIM
MANAGEMENT OF DEBTORS' FACILITIES, AND (2) PURCHASING
DEBTORS' FACILITIES OR ASSETS**

I, Robert Sands, declare as follows:

1.      I have personal knowledge of the following facts, and I am competent to testify to their truth, under oath, if called as a witness.

2.      I am employed as the Assistant Deputy Director of Audits and Investigations (A&I), California Department of Health Care Services (DHCS). As the Assistant Deputy Director of A&I, I am responsible for directing and overseeing the audit and investigations operations of A&I.

3. .      On September 4, 2013, DHCS sent the first letter to Brius Management Company (Brius) regarding the placement of Highland Park and Brighton Place Spring Valley (Brighton) on twenty percent withhold for failure to file a home office cost report.

4.      On October 10, 2013, DHCS sent the second letter to Brius Management Company regarding the placement of Highland Park and Brighton on one hundred percent withhold for failure to file a home office cost report.

5.      On October 30, 2013, DHCS and Axiom Healthcare (Axiom - cost report preparer) exchanged e-mails regarding the filing of a home office cost report for Brius Management Company.

6.      On December 20, 2013, DHCS sent a letter to Mr. Mike Lesnick of Axiom, which stated that Highland Park and Brighton will remain on withhold pending the filing of a home office cost report as required under Title 42, Code of Federal Regulations, Section 413.24 and CMS Pub. 15-1, Section 2413, for Brius. The letter listed five specific items for Axiom to submit along with the home office cost report. Among the items requested was a full disclosure of all facilities owned

1    by Shlomo Rechnitz (Rechnitz).  In prior years, Axiom had not disclosed to the

2    audit staff all of the facilities owned by Mr. Rechnitz.

3         7.      On January 29, 2014, DHCS held a telephone conference with Mr.

4    Rechnitz's representative, Mike Lesnick of Axiom (Lesnick) and Mark Johnson of

5    Hooper, Lundy, and Bookman (Johnson) to discuss the facilities on withhold.  Both

6    parties agreed that Mr. Rechnitz's operations need to be reviewed on a global basis

7    which would a home office cost report that incorporated all of the various regional

8    offices such as Boardwalk West Financial Services LLC (Boardwalk), Citrus

9.   Wellness LLC (Citrus), Core Healthcare Centers LLC (Core), and all the related

10   party transactions such as Twin Med and JI Medical.  Mr. Lesnick stated that he

11   would give DHCS a proposal for a global home office cost report.  To date, Mr.

12   Lesnick has not submitted a proposal for a global home office cost report.

13        8.      On February 6, 2014, DHCS received a home office cost report for

14   Brius and a home office cost report for Brius LLC.  The two home office cost

15   reports disclose no assets, no liabilities, no income, and no expense for either Brius

16   or Brius LLC.

17        9.      On February 7, 2014, DHCS informed Mr. Johnson that the auditors

18   found fees for Rockport Healthcare Services (Rockport) during the review of the

19   2012 cost report and inquired if a home office cost report would be filed for

20   Rockport.

21        10.     On February 7, 2014, Mr. Johnson stated that Rockport is an

22   administrative service company that provides various consulting and administrative

23   services to facilities in which Mr. Rechnitz had an ownership interest.  Neither Mr.

24   Rechnitz nor anyone related to Mr. Rechnitz had any ownership interest in

25   Rockport.

26        11.     On February 14, 2014, DHCS asked Mr. Johnson if a home office cost

27   report for Rockport would be filed and if not, why not.  DHCS also asked if

28

3

1  Rockport is a related party and that the issue of related party through control must
2  be addressed.  Mr. Johnson did not believe Rockport was a related party.

3      12.    On February 18, 2014, DHCS sent Mr. Johnson a request for nine
4  specific items to document the relationship between Rockport and Mr. Rechnitz.
5  There was no response.

6      13.    On February 24, 2014, DHCS e-mailed Mr. Johnson regarding the
7  status of the home office documentation.  Again, there was no response.

8      14.    On March 7, 2014, DHCS again e-mailed Mr. Johnson regarding the
9  status of the home office documentation, for which it did not receive a response

10     15.    On March 17, 2014, DHCS, once again, e-mailed Mr. Johnson
11  regarding the status of home office documentation, again, DHCS did no receive a
12  response.

13     16.    On March 24, 2014, DHCS formally requested from Mr. Johnson that
14  a home office cost report be filed for Rockport.

15     17.    On March 31, 2014, Mr. Johnson wrote to respond to DHCS's
16  December 20, 2013 letter.  The response included a list of fifty-eight facilities in
17  which Mr. Rechnitz had an ownership interest and a list of business entities in
18  which Mr. Rechnitz had an ownership interest.  This is the first time the number of
19  facilities owned by Mr. Rechnitz was disclosed to DHCS's Financial Audits
20  Branch.

21     18.    Mr. Johnson's March 31, 2014 letter claimed that Rockport was not a
22  related party and directed DHCS to contact Foley Hoag (Hoag), the attorney for
23  Rockport for any questions related to Rockport.  The letter stated, "We are
24  informed that Rockport Healthcare Services, LLC ("Rockport") is owned by Steven
25  Stroll and Marsha Stroll, each as individuals."  The letter also disclosed that Steven
26  Stroll was Mr. Rechnitz's certified public account and had been providing tax
27  services to Mr. Rechnitz since 1998.

28

4

1    19.    On April 8, 2014, DHCS contacted Mr. Hoag and requested

2 documentation regarding the relationship between Rockport and Mr. Rechnitz.

3 DHCS also requested an explanation on why Rockport was not a related party to

4 Mr. Rechnitz and to specifically address the issue of relationship through control.

5    20.    On April 9, 2014, DHCS e-mailed Mr. Johnson regarding his March

6 31, 2014 letter. DHCS inquired about the relationship of Rechnitz to Boardwalk

7 and Citrus and if a home office cost report should be filed for the two entities.

8 DHCS also inquired if the related party profit had been removed from the filed cost

9 reports at the facilities. DHCS asked some additional questions regarding the

10 relationship of Mr. Rechnitz to Rockport and requested documentation of the

11 related party costs for facility lease expense.

12    21.    On April 22, 2014, DHCS inquired on the status of its April 9, 2014

13 request.

14    22.    On the same day, DHCS also inquired with Mr. Hoag regarding the

15 status of its April 8, 2014 request for the documentation related to Rockport.

16    23.    On April 23, 2014, Mr. Johnson requested clarification on the

17 outstanding documentation requests and inquired about removing the withholds

18 from the two facilities.

19    24.    On April 29, 2014, DHCS inquired with Mr. Hoag regarding the status

20 of its April 8, 2014 request for the documentation related to Rockport.

21    25.    On April 30, 2014, DHCS reminded Mr. Johnson that, on January 29,

22 2014, he and Mr. Lesnick agreed that the review of Mr. Rechnitz's operations

23 should be done on a global basis and that Mr. Lesnick was going to present a

24 proposal for a global home office cost report that incorporated all the regional

25 offices and the related party transactions. DHCS informed Mr. Johnson that the

26 two Brius home office cost reports were incomplete and inconsistent with other

27 information previously disclosed. Specifically, the two home office cost reports

28 failed to disclose any assets, liabilities, equity, income, or expense. Mr. Johnson

1    was informed that the two Brius home office cost reports did not constitute proper

2    home office cost reports and the Highland Park and Brighton facilities would

3    remain on a one hundred percent withhold.

4        26.    On May 15, 2014, DHCS held a telephonic conference with Mr.

5    Johnson to clarify the outstanding document requests and the need to file home

6    office cost reports.

7        27.    On May 15, 2014, DHCS inquired with Mr. Hoag regarding its April

8    8, 2014 request for the Rockport documentation.

9        28.    On May 22, 2014, DHCS again inquired with Mr. Hoag regarding its

10   April 8, 2014 request for the Rockport documentation.

11       29.    On May 28, 2014, Mr. Johnson wrote to DHCS, stating that

12   Boardwalk and Citrus are related parties and that home office cost reports should

13   have been filed but were not.  Mr. Johnson's letter also stated that the related party

14   profit for Boardwalk and Citrus were not eliminated on the filed facilities' cost

15   reports.  The same letter also stated that Mr. Stroll was not Mr. Rechnitz's agent.

16   However, the statement is contrary to the records at the Secretary of State's Office.

17       30.    On June 4, 2014, Mr. Hoag confirmed that Mr. Stroll is the owner of

18   Rockport, that Rockport provides services to all fifty-eight of Mr. Rechnitz's

19   facilities and three non-Rechnitz-owned facilities.

20       31.    On August 22, 2014, DHCS sent a formal letter to Mr. Johnson that

21   the failure of Mr. Rechnitz to submit a home office cost report for Rockport,

22   Boardwalk, and Citrus has impeded the State's ability to complete the audits of 57

23   nursing facilities and to establish NF B rates when the rate year started on August 1,

24   2014.  If the home office cost reports are not received by September 22, 2014,

25   DHCS will place 55 facilities on 20% withhold under Title 42, Code of Federal

26   Regulations, Section 413.24 and CMS Pub. 15-1, Section 2413.  The two facilities

27   currently on 100% withhold will remain on 100% withhold.

28

6

32.     If DHCS does not to receive Rockport, Boardwalk, and Citrus home office cost reports by September 22, 2014, DHCS will place 100% withhold to all 55 facilities, all interim payments since the beginning of the cost reporting period can be deemed overpayments per CMS. Pub. 15-1, Section 100.

33.     If Rechnitz does not submit the Rockport, Boardwalk, Citrus home office cost reports after the 100% withhold, DHCS can take administrative action to temporarily suspend the facilities from providing Medi-Cal services.

34.     Given the significant degree of non-compliance by Rechnitz in submitting home office cost reports, DHCS has grave concerns, in the instant case, about the pending sale of additional facilities.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on August _28_, 2014, at Sacramento California.

_____
Bob Sands
Declarant

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 300 South Spring Streeet, Room 1072, Los Angeles, CA  90012.

A true and correct copy of the foregoing document described  **EMERGENCY MOTION TO DISQUALIFY STALKING HORSE PARTIES FROM (1) INTERIM MANAGEMENT OF DEBTORS' FACILITIES , AND (2) PURCHASING DEBTORS' FACILITIES  OR ASSETS**_____will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 28, 2014,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below


SEE ATTACHED SERVICE LIST

                                        [X] Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On  **August 28, 2014,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


SEE ATTACHED SERVICE LIST

                                        [X]Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 28, 2014,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Honorable Catherine E. Bauer                    **(VIA OVERNIGHT MAIL)**
U.S. Bankruptcy Court, Courtroom 365
411 W. Fourth Street, Suite 2030, Santa Ana, CA  92701-4593
                                        ☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 28, 2014 | Evelyn Mendoza | /s/ Evelyn Mendoza |
|---|---|---|
| Date | Type Name | Signature |

_This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California._

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Michael A Abramson** maa@abramsonlawgroup.com
- **Russell S Balisok** balisok@stopelderabuse.org
- **Robert D Bass** rbass@greenbass.com
- **Ron Bender** rb@lnbyb.com
- **Richard S Berger** rberger@lgbfirm.com,
  marizaga@lgbfirm.com;ncereseto@lgbfirm.com;msutton@lgbfirm.com
- **Manuel A Boigues** bankruptcycourtnotices@unioncounsel.net
- **Matthew Borden** borden@braunhagey.com, fair@braunhagey.com
- **Michael J Bujold** Michael.J.Bujold@usdoj.gov
- **Steven Casselberry** scasselberry@mrllp.com, jjacobs@mrllp.com
- **Cheryl S Chang** Chang@Blankrome.com, Lalocke@Blankrome.com;RMerten@Blankrome.com
- **Baruch C Cohen** bcc4929@gmail.com, pjstarr@starrparalegals.com
- **Michael T Delaney** mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
- **Marianne M Dickson** MDickson@seyfarth.com, shobrien@seyfarth.com
- **Caroline Djang** cdjang@rutan.com
- **Joseph A Eisenberg** jae@jmbm.com,
  vr@jmbm.com;tgeher@jmbm.com;bt@jmbm.com;jae@ecf.inforuptcy.com
- **Andy J Epstein** taxcpaesq@gmail.com
- **Fahim Farivar** lawyercpa@gmail.com
- **William L Foreman** wforeman@oca-law.com, laiken@oca-law.com
- **Eric J Fromme** ejf@jmbm.com, lo2@jmbm.com
- **Jeffrey K Garfinkle** jgarfinkle@buchalter.com,
  docket@buchalter.com;dcyrankowski@buchalter.com
- **Fredric Glass** fglass@fairharborcapital.com
- **Christina Goebelsmann** cgoebelsmann@wargofrench.com
- **Matthew A Gold** courts@argopartners.net
- **Nancy S Goldenberg** nancy.goldenberg@usdoj.gov
- **D Edward Hays** ehays@marshackhays.com, ecfmarshackhays@gmail.com
- **Mark S Horoupian** mhoroupian@sulmeyerlaw.com,
  ppenn@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com;ppenn@ecf.inforuptcy.com
- **Ivan L Kallick** ikallick@manatt.com, ihernandez@manatt.com
- **David I Katzen** katzen@ksfirm.com, schuricht@ksfirm.com
- **Gerald P Kennedy** gerald.kennedy@procopio.com,
  kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- **Monica Y Kim** myk@lnbrb.com
- **K Kenneth Kotler** kotler@kenkotler.com, zoe@kenkotler.com
- **Ian Landsberg** ilandsberg@landsberg-law.com, bgomelsky@landsberg-
  law.com;cdonoyan@landsberg-law.com;dzuniga@landsberg-law.com
- **Mary D Lane** mal@msk.com, mec@msk.com
- **Leib M Lerner** leib.lerner@alston.com
- **Elan S Levey** elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- **Howard S Levine** howard@cypressllp.com, jennifer@cypressllp.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

- **Elizabeth A Lossing** elizabeth.lossing@usdoj.gov
- **Samuel R Maizel** smaizel@pszjlaw.com, smaizel@pszjlaw.com
- **Craig G Margulies** craig@marguliesfaithlaw.com,
  staci@marguliesfaithlaw.com;mhillel@marguliesfaithlaw.com;fahim@marguliesfaithlaw.com
- **Ashley M McDow** amcdow@bakerlaw.com,
  mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com
- **Krikor J Meshefejian** kjm@lnbrb.com
- **Kenneth Miller** kmiller@ecjlaw.com, kanthony@ecjlaw.com
- **Benjamin Nachimson** ben.nachimson@wgfllp.com
- **Tara L Newman** tara.newman@doj.ca.gov
- **Robert B Orgel** rorgel@pszjlaw.com, rorgel@pszjlaw.com
- **Christopher E Prince** cprince@lesnickprince.com
- **Hanna B Raanan** hraanan@marlinsaltzman.com,
  jhawkes@marlinsaltzman.com;sshepard@marlinsaltzman.com;irvinefileclerk@marlinsaltzman.c
  om
- **Hamid R Rafatjoo** hrafatjoo@venable.com, kfox2@venable.com;bclark@venable.com
- **Kurt Ramlo** kr@lnbyb.com
- **Brett Ramsaur** bramsaur@swlaw.com, kcollins@swlaw.com
- **Paul R Shankman** pshankman@jhindslaw.com
- **Lindsey L Smith** lls@lnbyb.com
- **Adam D Stein-Sapir** info@pfllc.com
- **Alan Stomel** alan.stomel@gmail.com, astomel@yahoo.com
- **Kelly Sweeney** ksweeney@spiwakandiezza.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Jeanne C Wanlass** jwanlass@loeb.com, karnote@loeb.com;ladocket@loeb.com
- **Joshua D Wayser** joshua.wayser@kattenlaw.com,
  jessica.mickelsen@kattenlaw.com;kim.johnson@kattenlaw.com,ecf.lax.docket@kattenlaw.com,ad
  elle.shafer@kattenlaw.com
- **Andrew F Whatnall** awhatnall@daca4.com
- **Elisa B Wolfe-Donato** Elisa.Wolfe@doj.ca.gov
- **Jennifer C Wong** bknotice@mccarthyholthus.com
- **David Wood** dwood@marshackhays.com, ecfmarshackhays@gmail.com
- **Benyahou Yeroushalmi** ben@yeroushalmilaw.com
- **Kristin A Zilberstein** bknotice@mccarthyholthus.com, kzilberstein@mccarthyholthus.com

## II. SERVED BY U.S. MAIL

Hooper Lundy and Bookman, Inc.
,

JCH Consulting Group, Inc.
,

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                              **F 9013-3.1.PROOF.SERVICE**

LF Enterprises Partnership
c/o Law Offices of Alan F. Broidy, APC
1925 Century Park East
17th Floor
Los Angeles, CA 90067

Levene, Neale Bender Rankin & Brill LLP
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067

NSBN
,

Sanders Collins & Rehaste, LLP
,

Benjamin P Wasserman
235 E Broadway Ste 206
Long Beach, CA 90802

Bradley Yourist
Yourist Law Corporation
11111 Santa Monica Blvd.
Suite 100
Los Angeles, CA 90025

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**